IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YOLANDA WEDDINGTON, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | ) No. 15 C 1268<br>)<br>) District Judge Joan H. Lefkow |
| AETNA LIFE INSURANCE COMPANY, | ) Magistrate Judge Sidney I. Schenkier<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Defendant Aetna Life Insurance Company ("Aetna") has filed a motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c), seeking to quash Plaintiff Yolanda Weddington's First Set of Interrogatories to Defendant and First Set of Requests for Production of Documents to Defendant (doc. # 30). The motion has been referred to this Court for ruling (doc. # 34). Ms. Weddington opposes the motion, arguing that her discovery requests constitute permissible exploration into the administrative record that rests at the center of her claim against Aetna (doc. # 37). For the following reasons, we grant Aetna's motion for a protective order.[1]

I.

We begin with the procedural history of this case. Ms. Weddington is a former employee of The Home Depot, U.S.A., Inc., and, as a consequence of this employment, participated in a Long Term Disability—Salaried Associates Plan (the "Plan") underwritten and administered by Aetna (docs. ## 1, 20). The Plan is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1002(1) (*Id.*). Ms.

---

[1] Aetna also sought a stay of discovery pending resolution of the instant motion for a protective order. The District Court granted this request on August 4, 2015 (doc. # 33).

Weddington stopped working for The Home Depot in September 2013, claiming numerous physical and mental ailments as the impetus for leaving her employment, and she then filed for long term benefits under the Plan (doc. # 1). In December 2013, Aetna denied Ms. Weddington's claim for benefits under the Plan (doc. # 20). This lawsuit ensued, wherein Ms. Weddington seeks benefits allegedly due under the Plan, and a declaratory judgment as to her future rights under the Plan.

Subsequent to the filing of the lawsuit, Ms. Weddington propounded five interrogatories and five requests to produce upon Defendant, seeking information that she describes as falling into three categories: (1) Aetna's internal procedures and protocols applicable to her claim, including certain definitions as to terms she describes as "cryptic;" (2) processes related to Aetna's engagement of certain medical consultants, and definitions relating thereto; and (3) protocols Aetna uses for reviewing claims when illegible handwritten medical records are involved (doc. # 37: Pl.'s Resp. to Def.'s Mot. Protective Order ("Pl.'s Resp.") at 1-2). Aetna objects to these inquiries, asserting that this case is an ERISA matter governed by the arbitrary and capricious standard of review (under which discovery is normally disfavored), and that Ms. Weddington has not met the two threshold burdens of proof required before additional limited discovery may be permitted (doc. # 31: Aetna's Mot. Protective Order ("Def.'s Mot.") at 3-11). Ms. Weddington responds that her discovery is appropriate because it "constitutes discovery into the administrative record"—which she is entitled to obtain (Pl.'s Resp. at 2). Ms. Weddington also asserts that she is entitled to the requested information "as discovery into the extent to which Aetna's undisputed structural conflict of interest affected its fiduciary decision-making on Plaintiff's benefit claim" (*Id.*).

## II.

The scope of discovery in ERISA actions is determined by the applicable standard of review, which in turn depends on the nature of the ERISA plan at issue. In instances where the plan at issue gives the plan administrator broad discretion to decide eligibility for benefits, judicial review is governed by the arbitrary and capricious standard, based on a consideration of the administrative record, and discovery generally is not permitted. *See Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004); *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 980, 982 (7th Cir. 1999). This deferential standard applies where there is no question that the application for benefits was given a "genuine evaluation"—that is, that the evaluator did was he was supposed to do (evaluate the claim), as opposed to, for instance, throwing the claim "in the trash rather than evaluat[ing] [it] on the merits." *Perlman*, 195 F.3d at 982.

The "genuine evaluation" language of *Perlman* illuminated an important distinction between those cases in which no evidence has been presented to suggest anything other than a fair evaluation, and those exceptional cases "in which a prima facie showing of bias or conflict of interest has been made." *Semien v. Life Ins. Co. of N.A.*, 436 F.3d 805, 813 (7th Cir. 2006). In the latter instance, where "impartiality can fairly be questioned," district courts are permitted to deviate from the general prohibition against discovery and to allow limited discovery so as to ensure that the arbitrary and capricious standard is not "toothless." *Id.* at 814. However, to open the door to this limited discovery, a plaintiff must satisfy two threshold burdens. "First, a claimant "must identify a specific conflict of interest or instance of misconduct. Second, a claimant must make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Id.* at 815. This

3

standard for obtaining discovery sets "a high bar for individuals whose claims have been denied by a plan administrator with discretionary authority." *Id.*

Subsequent to *Semien*, the Supreme Court decided *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). *Glenn* addressed the question of whether an ERISA plan administrator, when acting as both the administrator and the payor of benefits, operated pursuant to a structural conflict of interest. *Id.* at 114. Answering in the affirmative, the Supreme Court then minimized the effect of this conclusion by observing that the presence of a conflict was "but one factor among many" that a reviewing judge must take into account when reviewing the decision of a plan administrator. *Id.* at 116. The conflict of interest could prove to be of greater importance "where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* at 117. The conflict of interest could "prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Id.* Applying this framework to the facts of the case, the Court found no error with the appellate court's usage of a "combination-of-factors" method to conclude that the plan administrator's discretionary decision should be set aside. *Id.* at 118.

While not decided in the context of a discovery dispute, the language of *Glenn* caused some courts within this circuit to question the continued validity of *Semien*. *See, e.g., Gessling v. Group Long Term Disability Plan for Employees of Sprint/United Mgmt. Co.*, No. 1:07-cv-483-DFH-DML, 2008 WL 5070434 (S.D. Ind., Nov. 26, 2008) (concluding that *Glenn* appeared to

4

supersede *Semien*). The Seventh Circuit addressed the continuing viability of *Semien* in *Dennison v. MONY Life Retirement Income Security Plan for Employees*, 710 F.3d 741 (7th Cir. 2013), and explained that *Glenn* "suggest[s] a softening, but not a rejection, of the standard announced in *Semien*." *Id.* at 747. The appeals court reaffirmed that the arbitrary and capricious standard remains the correct standard of review to be applied where the plan delegates interpretive authority to the plan administrator. *Id.* Furthermore, the court made clear that "benefits review officers should [not] be subjected to extensive discovery on a thinly based suspicion that their decision was tainted by a conflict of interest," noting that there is a "latent conflict of interest any time someone is asking for money from a company." *Id.* at 746. The *Dennison* court noted that in those cases where discovery may be necessary to explore a conflict of interest, the trial courts retain the discretion to limit and manage discovery under Rule 26. *Id.* at 747.

In the two years since *Dennison*, a number of courts in this circuit have had occasion to consider whether cases seeking review of an administrator's exercise of discretion in denying benefits constituted "run-of-the-mill" cases for which no conflict-related discovery is permitted, or "exceptional" cases (that is, cases raising a suspicion of bias or misconduct) for which limited discovery may be permitted. In *Warner v. Unum Life Ins. Co. of America*, No. 12 C 2782, 2013 WL 3874060 (N.D. Ill., July 26, 2013), the court examined *Semien, Dennison and Glenn* and concluded that the Seventh Circuit's approach to discovery requires that a claimant seeking additional discovery must "identify a specific conflict or instance of misconduct and make a prima facie showing that there is good cause to believe that limited discovery will reveal a procedural conflict"—but that the claimant's burden in making this burden is not "onerous." *Id.* at *3. Applying this standard, the *Warner* court concluded that the claimant successfully made a

5

threshold showing of a conflict of interest or instance of misconduct. Among other things, Plaintiff had offered evidence that defendant Unum Life Insurance Company had a history of hostility towards fibromyalgia cases, a tendency to rely on file reviews by consulting physicians instead of in-person examinations, and a history of biased claims administration culminating in multiple investigations by both federal and state regulatory authorities and in the payment of fines and claim pay-outs measuring in the millions of dollars. *Id.* At the same time, the court cautioned that *Dennison* did not open ERISA cases up to the full scope of discovery permitted in other civil cases. Rather, any permitted discovery "must be tailored to what is necessary and reasonable to probe the conflict of interest allegations and the safeguards in place to protect the appeals process from bias." *Id.* at *5

In *Gebert v. Thrivent Financial for Lutherans Group Disability Income Ins. Plan*, No. 13-C-170, 2013 WL 6858531 (E.D. Wisc., Dec. 30, 2013), the court considered *Warner* closely as it evaluated the claims of Ms. Gebert, who sought conflict discovery based on her allegations that the defendant plan administrator improperly relied on the opinion of an independent medical consultant to conclude that she was not disabled by her migraine headaches. Assessing the facts before it, the court found that Ms. Gebert was unable to make a prima facie showing that would entitle her to limited discovery. The court reasoned that the record contained no evidence of a history of government fines or historical bias or other factor indicating that something untoward had happened, and that her claim, thus presented, was a run-of-the-mill situation. *Id.* at *3. The court further explained that "[i]t goes without saying that *every* ERISA plaintiff challenging a benefits denial will be able to point to evidence in the medical record supportive of her claim. . . . [I]f it were enough to cite medical evidence supportive of a benefits claim, then *every* case would justify opening the doors to discovery. Instead, unless something about the merits of the claim
6

jumps off the page, the mere fact that the plaintiff's own physicians supported her claim is not enough to raise the specter of impropriety." *Id.* (emphasis in original); *see also Ryan v. Cargill, Inc.*, 73 F. Supp. 3d 994 (C.D. Ill. 2014) (denying additional discovery where neither the claimant's complaint nor motion for discovery identified a specific conflict or instance of misconduct but instead alleged only that the plan administrator, as both the plan sponsor and administrator, operated pursuant to a structural conflict of interest).[2]

### III.

Turning to the case at hand, we conclude that Ms. Weddington is not entitled to the discovery she seeks because she is unable to satisfy the first threshold burden of identifying a specific conflict or instance of misconduct on Aetna's part. Ms. Weddington asserts that she has met her burden of proof as to a specific conflict or instance of misconduct on Aetna's part simply by alleging the existence of a structural conflict inherent in her relationship with Aetna. In other words, Ms. Weddington maintains that her burden of proof is met because Aetna is not only the entity that decides whether she qualifies for benefits, but also is the entity that must pay her benefits if she is deemed eligible. In support of her position, Ms. Weddington cites several cases that were decided before *Dennison*. *See, e.g., Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, 264 F.R.D. 394, 399 (N.D. Ill. 2009); *Barrett v. Life Ins. Co. of N. Am.*, No. 11 C 6000, 2012 WL 3544839, at *3-4 (N.D. Ill., Aug. 16, 2012). But, relying on case law decided after *Semien* but prior to *Dennison* is a risky proposition, as *Dennison* reaffirmed that discovery in ERISA cases involving review under the arbitrary and capricious standard remains

---

[2]The *Ryan* court did allow discovery on the discrete question of whether defendant Cargill had administered its plan consistently so as "to require termination after attainment of both the age and service requirements listed for a Disability Requirement Benefit." *Id.* at 1001. The court agreed with plaintiff Ryan that by making an assertion that this was in fact the case, Cargill "opened the door" to some discovery on this question for purposes of verification. *Id.*

7

the exception and not the rule. *See Dennison*, 710 F.3d at 746 (finding that "[b]enefits review officers should [not] be subjected to extensive discovery on a thinly based suspicion that their decision was tainted by a conflict of interest"). We read *Dennison* as saying that a claimant such as Ms. Weddington cannot obtain discovery merely by pointing to a structural conflict, as that approach would open the door too broadly. Rather, a claimant is entitled to discovery only upon first showing something "more" to suggest that the structural conflict might drop to the bottom line of the decision-making process: such as a history of bias, or prior findings of conflict by other courts. As stated in *Ryan*, 73 F. Supp. 3d at 1000, "[o]ne cannot meet the 'softened' *Semien* standard with virtually no facts, or even allegations, related to a conflict." Ms. Weddington provides no discernible facts in support of her argument that a specific conflict of interest or instance of misconduct occurred in this case.

Also in support of her argument, Ms. Weddington alleges that the administrative record is incomplete and that Aetna is concealing material information from her (Pl.'s Resp. at 5). Specifically, Ms. Weddington says that Aetna omitted materials from the record, discounted certain illegible handwritten notes and medical progress notes, and failed to indicate how they weighed peer review doctor opinions against those of her treating physicians (*Id.* at 12). Ms. Weddington asserts that Aetna has a fiduciary duty of loyalty "to compile a complete administrative record of all material germane to the claim within Aetna's possession and that was known to Aetna, whether the review chose to rely on the material or not" (*Id.* at 3). Ms. Weddington thus argues that she is entitled to receive, by means of discovery, information that she claims bears upon these omissions.

We find that Ms. Weddington's assertion of an incomplete administrative record falls short of suggesting that some form of misconduct or bias has occurred. Ms. Weddington's

8

central complaint addresses the manner in which the administrator assessed the evidence. But she fails to cite any medical evidence that was "germane to the claim" yet was omitted from the record before the court on review. As for her complaint about Aetna's handling of illegible notes and weighing of peer review opinions vis-à-vis treater opinions, that speaks to the merits of Aetna's determination and not to a specific conflict of interest or instance of misconduct. Ms. Weddington naturally is unhappy about the disposition she received, but her assertion that Aetna ignored certain documents and/or gave insufficient weight to the opinions of her treating physicians merely places this case squarely within the category of the "typical" benefits challenge case (the "run-of-the-mill" case) for which additional discovery is not allowed.

As noted in *Gebert*, 2013 WL 6858531 at *3, "*every* ERISA plaintiff challenging a benefits denial will be able to point to evidence in the medical record supportive of her claim. In such cases there will likely be physician records supportive of disability, and the plaintiff would thus suggest that there is something awry about the insurer's decision to disregard that evidence." *Id.* (emphasis in original). But, "if it were enough to cite medical evidence supportive of a benefits claim, then *every* case would justify opening the doors to discovery." *Id.* The arguments Ms. Weddington raises are not of the variety that "jump[ ] off the page" and raise a "specter of impropriety." *Id.*; *see also Great Am. Ins. Co. v. U.S.*, No. 12 C 9718, 2013 WL 4506929, at *4-5 (N.D. Ill., Aug. 23, 2013) (denying discovery where plaintiffs merely speculated that the defendant agency relied upon information not contained in the administrative record); *Boxell v. Plan for Group Ins. of Verizon Commc'n, Inc.*, No. 1:13-cv-89, 2013 WL 5230240, at *5 (N.D. Ind., Sept. 16, 2013) (denying conflict discovery where plaintiff's allegations of an incomplete record fell "short of showing that relevant material [was] missing from the administrative record").

9

## IV.

Because Ms. Weddington is unable to show the existence of a specific conflict or instance of misconduct, we need not proceed on to an examination of the second threshold issue—whether Ms. Weddington is able to make a prima facie showing that there is good cause to believe that the limited discovery she seeks would reveal a procedural defect. That being said, we observe that many of Ms. Weddington's arguments on this second point are really arguments that go to the merits of this case; that is, whether Aetna acted arbitrarily and capriciously when it denied her benefits under the Plan.

For instance, Ms. Weddington asserts that Aetna's file reviewers disagreed with Ms. Weddington's treating physicians; that Aetna's denial letter copied and pasted doctors' conclusions without indicating how these conflicting conclusions were weighed; that Aetna declined to contact certain doctors whose records were deemed illegible; and that Aetna declined to have multiple physicians of its choice examine her (Pl.'s Resp. at 12-13). But these assertions do not suggest entrenched procedural defects or implicate "a long-term strategy to carry out its duties as plan administrator for the benefit of the employer, rather than for the benefit of the plan participants and beneficiaries." *Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 Fed. Appx. 978, 982 (6th Cir. 2010). Rather, these arguments attack the handling of Ms. Weddington's claim adjudication, but do nothing to expose a larger strategy on Aetna's part to deny claimants their benefits.[3]

---

[3] While we do not address the merits of Ms. Weddington's claim, we note that ERISA does not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Furthermore, "[l]ike a suit to challenge an administrative decision, a suit under ERISA is a review proceeding, not an evidentiary proceeding." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 875 (7th Cir. 1997).

In this same vein, we observe that Ms. Weddington's receipt of Social Security disability benefits is not relevant to her request for additional discovery. As noted in *Krolnik v. Prudential Ins. Co. of America*, 570 F.3d 841, 844 (7th Cir. 2009), "a finding of disability under the Social Security program need not imply disability for any other purpose." It is for the district court, upon evaluation of the merits of Ms. Weddington's claims, to determine whether there are any factors relevant to her receipt of Social Security disability benefits that also are relevant to the manner in which Aetna handled (or should have handled) her claim. *See Id.* (noting that "[t]he district judge should compare the Social Security rules with the Plan's terms, to ascertain whether the award of Social Security benefits is informative"); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823 (2003) (discussing differences between the Social Security disability program and ERISA benefit plans, including the fact that while Social Security benefits are determined pursuant to a uniform set of federal criteria, benefits under an ERISA plan are likely to turn on the interpretation of the terms in the specific plan at issue).

Finally, we note that many of the discovery items Ms. Weddington seeks involve internal processes and procedures, or the thought processes of a peer reviewer, and thereby likely relate to the mental processes of the Plan's administrator. As is the case when the decision maker is an administrative agency, the mental processes of a plan administrator such as Aetna are not the proper subject of discovery. *Semien*, 436 F.3d at 813; *Perlman*, 195 F.3d at 982 ("when there can be no doubt that the application was given a genuine evaluation, judicial review is limited to the evidence that was submitted in support of the application for benefits, and the mental processes of the plan's administrator are not legitimate grounds of inquiry"). On this additional ground, we find that even if limited discovery were appropriate, many of the discovery requests Ms. Weddington has propounded upon Aetna are improper.

11

## CONCLUSION

For the reasons set forth above, the Court grants Aetna's motion for a protective order as to Plaintiff Yolanda Weddington's First Set of Interrogatories to Defendant and First Set of Requests for Production of Documents to Defendant (doc. # 30). This referral is terminated.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated:** **October 21, 2015**